# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EMCASCO INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>C AND C GROCERY AND MARKET, INC.; )<br>DALE M. ATWOOD; )<br>CYNTHIA GALE ATWOOD; )<br>RONNIE LEE LAYMAN, JR.; )<br>STEPHANIE K. LAYMAN; and )<br>DOBBERS C&C GROCERY, LLC, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>)<br>C AND C GROCERY AND )<br>MARKET, INC.; )<br>RONNIE LEE LAYMAN, JR.; and )<br>STEPHANIE K. LAYMAN, )<br>)<br>Third Party )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MCGREGOR INSURANCE GROUP, LLC; )<br>and HEATHER MCGREGOR, )<br>)<br>Third Party )<br>Defendants. ) | Case No. 19-cv-427-DES |

## **OPINION AND ORDER**

This matter comes before the Court on Plaintiff EMCASCO Insurance Company's Rule 12(b)(6) Motion to Dismiss a Certain Theory Alleged in Defendants' Amended Counterclaim (Docket No. 70).

1

I. **Background**

Plaintiff EMCASCO Insurance Company ("Plaintiff" or "EMCASCO") initiated this action seeking declaratory judgment on December 19, 2019 and then amended the Complaint on February 3, 2020. EMCASCO alleges that it issued a commercial property insurance policy ("policy") to Defendant C&C Grocery and Market, Inc. ("C&C") with annual policy periods from May 31, 2013 through May 31, 2020 providing insurance coverage for a commercial building ("building") located in Eufaula, Oklahoma as well as business personal property. Prior to March 1, 2019, the building, along with the real property on which it was situated, was owned by Defendants Dale and Cynthia Atwood ("Atwoods"), jointly. The Atwoods were also the sole shareholders of the insured, C&C.

Contained within the policy were "Common Policy Conditions" that included conditions related to transferring rights and duties under the policy, such as requiring written consent from the insurer to transfer the policy, except upon the death of the insured. EMCASCO alleges that on March 1, 2019, the Atwoods deeded and conveyed their right, title and interest in the building and real estate as well as the corporate assets of C&C to Defendant Ronnie Lee Layman, Jr., but did not convey the corporation itself. It is EMCASCO's belief that the shares in C&C are still held by the Atwoods. Because of this, EMCASCO alleges that C&C ceased to have an insurable interest in the building as of March 2, 2019. Further, no notice of the transfer of interest was provided to EMCASCO by the McGregor Insurance Group which had procured the policy and acted as C&C's insurance agent.

On June 19, 2019, the building and its contents were destroyed by fire. EMCASCO alleges that at the time of the fire the only insured under the policy was C&C which no longer had an insurable interest in the property. Despite this, EMCASCO alleges that McGregor Insurance Group

submitted a claim for loss to EMCASCO under the policy for Defendant Stephanie Layman. EMCASCO denied the claim and filed this action seeking declaration determining the coverage.

On March 20, 2020, Defendants C&C, Ronnie Lee Layman, Jr., Stephanie Layman, and Dobbers C&C Grocery, LLC, ("Defendants") filed an Answer and Counterclaim[1] to Plaintiff's Amended Complaint, bringing a "Third Party Petition" against EMCASCO, Heather McGregor, and McGregor Insurance Group, LLC alleging that Ronnie Lee Layman, Jr. and Stephanie Layman ("Laymans") purchased "C&C Grocery, Inc. and its building, contents, equipment, appliances and all inventory from the Atwoods." (Docket Nos. 22, 24, 25). The Counterclaim also alleges that both the Atwoods and the Laymans met with Heather McGregor and informed her of the purchase and sought to make arrangements to continue coverage of the C&C assets. Defendants allege that Ms. McGregor acknowledged the change of ownership and made arrangements for the premiums to be paid by the Laymans and notified EMCASCO about the continuation of the policy.

Defendants' counterclaim against EMCASCO included allegations of breach of the insurance contract, breach of the implied duty of good faith and fair dealing ("bad faith") and negligence. On April 10, 2022, EMCASCO filed a Motion to Dismiss under Rule 12(b)(6) for two of the Defendants' claims. (Docket No. 29.) The first was to dismiss Defendants' negligence claims against EMCASCO as, under Oklahoma Law, negligence claims are not recognizable against an insurance company by its insured. The second was to dismiss Defendants' claim of bad faith as it failed to meet the plausibility standard set by *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544 (2007) and *Ashcroft v. Iqbal* 556 U.S. 662 (2009).

---

[1] Defendants originally filed an Answer on March 9, 2020, wherein they attempted to bring a counterclaim and crossclaim against both EMCASCO and a third party, McGregor Insurance Group, LLC, which the Court found deficient and in error. (Docket Nos. 21, 22). The Court thus struck Defendants' Answer and ordered them to file "a proper Answer and appropriate claims against the appropriate entities no later than March 20, 2020." (*Id*.)

In an Opinion and Order entered on March 31, 2021, the Court determined that under *Tolman v. Reassure Am. Life. Inc. Co.*, 391 P3d. 12, 123 (Okla. Ct. Civ. App. 2017), "Oklahoma Law does not provide for a negligence claim against an insurer by its insured." The only claims recognized against an insurer are breach of contract and bad faith. *Lewis v. Farmers Ins. Co., Inc.*, 681 P.2d 67, 69 (Okla. 1983). As such, EMCASCO's motion to dismiss Defendants' claim for negligence against EMCASCO was granted. (Docket No. 54 at 12).

As for EMCASCO's motion to dismiss the bad faith claims, EMCASCO argued that under the *Twombly* and *Iqbal* plausibility standard, the Defendants must plead facts that make the claim plausible. Specifically, Defendants must plead that they were covered under the insurance policy and that the insurers were required to take reasonable actions in handling the claim; that the insurer's actions were unreasonable under the circumstances and that they failed to deal fairly and act in good faith which directly caused damages to the insured. (Docket No. 29 at 8).

The Court determined in its Opinion and Order (Docket No. 54 at 12-13) that the Tenth Circuit has interpreted the plausibility standard to mean that if the scope of the allegations in the complaint are so general that they encompass a wide swath of conduct, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. *Robbins v. Oklahoma* 519 F. 3d 1242, 1247 (10th Cir. 2008). However, the Supreme Court found that "specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court found that Defendants' statement that EMCASCO "took extraordinary steps to deny the claim altogether" as evidence for bad faith were insufficiently conclusory. As such, Defendants were ordered to amend their Counterclaim for bad faith against EMCASCO to provide further facts in support of their claims. They were directed to do so no later than April 16, 2021. (Docket No. 54 at 14).

On August 6, 2021,[2] Defendants filed their Amended Counterclaim against EMCASCO, once again alleging breach of contract and bad faith. The additional facts included by Defendants to support their claims of bad faith were not explicitly clear. The Defendants appear to have combined the facts that relate to their breach of contract claim with their bad faith claim. Some of the facts added to the Amended Counterclaim were as follows:

> 10. Ms. McGregor provided the Atwoods, Laymans and C&C Grocery, Inc. a writing prepared by EMCASCO to continue the insurance.
> 13. Ms. McGregor provided forms to the Atwoods and Laymans to amend the obligation for payment of premiums. The policy was never transferred.
> 15. EMASCO [sic], by and through its insurance agent, specifically advised Defendants that coverage would continue without any interruptions, as long as the Layman's [sic] made C & C Grocery, Inc.'s premium payments.
> 16. Based on the fact that the Laymans were making the premium payments, the Layman's [sic] were assured by EMASCO's [sic] insurance agent they were covered, and by responding to EMASCO's [sic] forms evidencing this change of ownership, C & C Grocery, Inc. and the Laymans reasonably expected for coverage to be continuous and uninterrupted.
> 19. Despite C & C Grocery, Inc. and the Layman's [sic] being covered by an insurance policy provided by EMASCO [sic], EMASCO [sic] failed to pay the benefits for which C & C Grocery, Inc. paid roughly seven (7) years' worth of premiums.

(Docket No. 68 at 3-4.)

On August 20, 2021, EMCASCO filed another Rule 12(b)(6) Motion to Dismiss a Certain Theory Alleged in Defendants' Amended Counterclaim, claiming that Defendants again failed to allege sufficient facts necessary to state a claim for bad faith. They specially argue that all of the added facts relate to conduct of either EMCASCO or the insurance agent before the fire at issue and before the coverage was denied. (Docket No. 70 at 2). EMCASCO argues that under Oklahoma law, the "conduct of the insurer and the agent in selling and issuing the policy, cannot give rise to the tort of bad faith of an insurance contract," *Claborn v. Washington Nat'l Ins. Co.,* 910 P. 2d

---

[2] On July 28, 2021, notice was given to Defendants to show cause as to why they had not filed an Amended Counterclaim after being ordered to do so. A telephonic status conference was held on August 6, 2021 in which the Court granted Defendants until August 10, 2021 to file their Amended Counterclaim.

1046, 1051 (Okla. 1996); and that the tort of bad faith "must be based upon an insurer's wrongful denial of a claim[.]" *Hays v. Jackson Nat'l Life Ins. Co.,* 105 F. 3d 583, 590 (10th Cir. 1997). Furthermore, EMCASCO argues that an insurer does not breach its implied duty to act in good faith by merely refusing to pay a claim, so long as there is a legitimate dispute as to coverage. (Docket No. 70 at 4).

In their response to EMCASCO's Motion to Dismiss, Defendants allege that EMCASCO did not perform a proper investigation following the fire and that their reasons for denying the coverage were that the policy was not properly transferred to the Laymans because they never received a "writing" regarding the transfer. (Docket No. 72 at 2). Defendants allege that "EMCASCO refused to investigate coverage and instead, without talking to either the Laymans or the Atwoods about the auto draft form and their consult with McGregor concerning coverages, declined coverage on the basis that no 'writing' was prepared and submitted to EMCASCO by its own agent McGregor." *Id.*

Defendants argue that the conduct they allege to have been the bad faith is in fact EMCASCO's insufficient investigation. They allege that EMCASCO never spoke with the Laymans or the Atwoods and therefore failed to investigate the meeting the Laymans and the Atwoods had with their agent. EMCASCO also never investigated why the premium payments were paid from a different source. *Id* at 8. Defendants argue, this lack of investigation was the basis of their claim for bad faith. Defendants also argue that C&C's policy was never "transferred"; therefore, a denial based on this is unreasonable and bad faith. *Id* at 9.

EMCASCO in its Reply points out that the "facts" regarding EMCASCO's investigation are not alleged in Defendants' Amended Counterclaim and argue, at best, "Defendants have

6

alleged only that EMCASCO did not pay what Defendants believed was owed under the contract, which is not sufficient to state a claim for bad faith." (Docket No. 73 at 3).

II. **Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Courts would generally embrace a liberal construction of this pleading requirement and allow complaints containing only conclusory allegations to move forward unless factual impossibility was apparent from the face of the pleadings. *Robbins v. Oklahoma* 519 F.3d 1242, 1246 (10th Cir. 2008). However, the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), announced a new standard that held to withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim in which relief is plausible on its face. *Id* at 570. This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id* at 555 (quotation omitted).

III. **Discussion**

When looking at Defendants' Amended Counterclaim, and specifically the allegations of bad faith, there are no facts that would trigger an application of bad faith. A plaintiff (or in this case Defendants) may demonstrate bad faith with evidence that the insurer denied the claim for an illegitimate reason, "failed to treat the insured fairly," or "performed an inadequate investigation of the claim." *Shotts v. GEICO Gen. Ins. Co.* 943 F. 3d. 1304, 1315 (10th Cir. 2019). There are no facts alleged in Defendants' Amended Counterclaim that would show any of these instances would apply. While the facts alleged by Defendants in their Amended Complaint if true, might show EMCASCO may have breached its contract; this alone is not enough to prove bad faith.

The analysis turns on the reasonableness of the EMCASCO's actions when denying coverage. *Badillo v. Mid Century Inc. Co* 121 P 3d. 1080, 1093 (Okla. 2005). All of Defendants' facts focus on the conversation Defendants had with the insurance agent when allegedly setting up the policy. They do not elaborate on what EMCASCO did following the fire and the claim being made, other than to say EMCASCO failed to pay the benefits. (Docket No. 68 at 4, ¶19). Failure to pay a claim is not a breach of the implied duty to act in good faith so long as there is a "legitimate dispute" as to coverage . . . and the insurer's position is "reasonable and legitimate." *Thompson v. Shelter Mut. Ins*., 875 F.2d 1460, 1462 (10th Cir.1989) (quoting *Manis v. Hartford Fire Ins*. Co., 681 P.2d 760, 762 (Okla.1984)). In its Amended Complaint, EMCASCO sets forth specific reasons why coverage under the policy was denied. (Docket No. 13 at 10-11, ¶¶37-38). Whether these reasons are true or correct, is not at issue here. The only thing that needs to be considered for the present motion is whether the Defendants have presented sufficient facts to show that EMCASCO's actions were unreasonable under the circumstances.

Under Oklahoma law, an insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Shotts* 943 F. 3d. at 1314. Liability for bad faith will only arise "where there is a clear showing that the insurer unreasonably and in bad faith withholds payment of the claim of its insured." *Skinner v. John Deere Ins. Co.,* 998 P. 2d 1219, 1223 (Okla. 2000). The insurer will not be liable for the tort of bad faith if it "had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *McCoy v. Oklahoma Farm Bureau Mutual Ins. Co*., 841 P.2d 568, 572 (Okla.1992).

Defendants only address EMCASCO's reasonableness in their Response to the Motion to Dismiss by alleging EMCASCO refused to investigate coverage and instead, "declined coverage

8

on the basis that no 'writing' was prepared and submitted to EMCASCO." (Docket No. 72 at 2). These facts were not alleged in the original Counterclaim or the Amended Counterclaim. As EMCASCO points out in its Reply (Docket No. 73 at 2), "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2014) (citations omitted). There are exceptions to this restriction, however, none are applicable in this case[3]. As such, when reviewing a Rule 12(b)(6) motion to dismiss, the court "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999) (quoting *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991)).

Defendants' Amended Counterclaim does not contain sufficient facts to support a claim for bad faith against EMCASCO; therefore, EMCASCO's Rule 12(b)(6) Motion to Dismiss Defendants allegations of bad faith is hereby GRANTED.

EMCASCO also argues that since the Defendants have had two opportunities to allege facts that would support their theory of bad faith, and failed to do so both times, a dismissal should be granted with prejudice. EMCASCO cites *A & B Stores, Inc. v. Employers Mutual Casualty Co.,* 2015 WL 1014808 at *3 (W.D. Okla. Mar. 9, 2015) (unpublished) in which the Court dismissing a bad faith theory with prejudice notes, "plaintiff was given the opportunity to amend and made minimal effort to correct the pleading deficiencies. . . .The court concludes two tries is enough." *Id.* "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.* 434 F. 3d

---

[3] Three limited exceptions: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice" *Gee*, 62 F.3d at 1186 (internal citations and quotations omitted).

1213, 1219 (10th Cir. 2006) (citation omitted). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, **failure to cure deficiencies by amendments previously allowed**, or futility of amendment." *Frank v. U.S. West,* 3 F.3d 1357, 1365 (10th Cir. 1993) (emphasis added) (citation omitted). "Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id* at 1366.

Rather than cure the defects as requested, Defendants again proffered facts that, while if found true, would go towards their claim of breach of contract, but fail as evidence of bad faith. Additionally, from the procedural history of this case, the Defendants had an additional four months to correct the defects found in their original Counterclaim, since they failed to file an Amended Counterclaim within the deadline originally set. Despite the extra time generously allowed, Defendants have not stated facts sufficient to state a claim of relief that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. The Court has the discretion to deny leave to amend for "failure to cure deficiencies by amendments previously allowed" *Bekkem v. Wilkie*, 915 F.3d 1258, 1276 (10th Cir. 2019) (quoting *Duncan v. Manager, Dep't of Safety, Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)); therefore, Defendants' request to once again amend their counterclaim is DENIED.

IT IS THEREFORE ORDERED that Plaintiff's Rule 12(b)(6) Motion to Dismiss Certain Theories Alleged in Defendants' Amended Counterclaim is hereby **GRANTED,** and Defendants' request for leave to file an amended counterclaim is hereby **DENIED.**

IT IS SO ORDERED this 20th day of June, 2023.

_____
D. Edward Snow
United States Magistrate Judge